UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS JAMES FOX, | Case No. 20-CV-1641 (DSD/LIB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| TIM WALZ and PAUL SCHNELL, | |
| Respondents. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, and upon Petitioner Thomas James Fox's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], (the "Petition").

For the reasons discussed herein, the Court recommends that the Petition, [Docket No. 1], be **DENIED** and that this action be **DISMISSED with prejudice.**

I.   BACKGROUND

In April 2012, Petitioner Thomas James Fox ("Fox") was charged in Washington County, Minnesota with one count of first-degree premeditated murder under Minn. Stat. § 609.185, subd. (a)(1), and one count of first-degree felony murder under Minn. Stat. § 609.185, subd. (a)(3). See, State v. Fox, 868 N.W.2d 206, 212 (Minn. 2015) [hereinafter Fox I]. Following trial, a jury found Fox guilty on both counts. See, Id. at 213. The trial court sentenced Fox to life without parole, a mandatory sentence for the premeditated-murder conviction. See, Id. at 213.

Fox filed a direct appeal challenging his convictions, and the Minnesota Supreme Court affirmed. See, Id. at 211.[1] Fox filed a petition for certiorari with the U.S. Supreme Court, and on November 16, 2015, the U.S. Supreme Court denied review. See, Fox v. Minnesota, 136 S. Ct. 509, 509 (2015).

Fox has subsequently filed two petitions for postconviction review in state court. He filed the first on November 28, 2016, and the trial court denied the petition on March 9, 2017. (See, Order, [Docket No. 16-6]). Fox appealed that determination, and the Minnesota Supreme Court affirmed on June 13, 2018. See, Fox v. State, 913 N.W.2d 429, 431 (Minn. 2018).

Fox filed the second petition for postconviction review on January 11, 2019, and the trial court denied that petition on May 30, 2019. (See, Order [Docket No. 16-8]). Fox again appealed, and the Minnesota Supreme Court affirmed on February 5, 2020. Fox v. State, 938 N.W.2d 252, 257 (Minn. 2020).

On July 27, 2020, this Court received Fox's present Petition, which relies on 28 U.S.C. § 2254 and targets Fox's 2013 convictions. (See, Pet. [Docket No. 1], at 1, 3–4). In the present Petition, Fox presents four grounds for relief.

- First, Fox contends that the trial court erred by allowing into evidence certain statements he made to police; Fox claims he had not waived his Miranda rights at the time of either statement. (See, Id. at 6–7); cf., Fox I, 868 N.W.2d at 213–21 (presenting Minnesota Supreme Court's discussion of relevant interactions).

- Second, Fox argues that at trial, the prosecution failed to prove every element of the relevant crimes beyond a reasonable doubt. (See, Pet. [Docket No. 1], at 7–8; cf., Fox I, 868 N.W.2d at 222–26 (presenting Minnesota Supreme Court's discussion of sufficiency arguments).

---

[1] Under standard state procedures for first-degree murder convictions, Fox's appeal went directly to the Minnesota Supreme Court rather than first going to the Minnesota Court of Appeals. See, Minn. R. Crim. Pro. 29.02, subd. 1(a). This rule also governs appeals from trial-court decisions on petitions for postconviction review when the relevant conviction is for first-degree murder. See, Id. subd. 1(b).

2

- Third, Fox argues that he experienced various forms of ineffective assistance of trial counsel. (<u>See</u>, Pet. [Docket No. 1], at 8–10).

- Finally, Fox claims that he received ineffective assistance of appellate counsel during his direct appeal. (<u>See</u>, <u>Id.</u> at 10–11).

On December 2, 2020, after reviewing the Petition, the Court ordered Respondents to file a memorandum addressing "[w]hether . . . Fox is entitled to equitable tolling of the statutory limitations period pursuant to 28 U.S.C. § 2244(d), and . . . [w]hether or not [Fox] has a colorable claim of actual innocence such that he may bypass the statute of limitations." (Order [Docket No. 15]). The Court received Respondents' memorandum on December 28, 2020, and Fox's reply on March 1, 2021. (<u>See</u>, Answer [Docket No. 16]; Pet'r's Traverse to Resp't's Answer [Docket No. 20] [hereinafter "Reply"]). Briefing is therefore complete on the equitable-tolling and actual-innocence issues.

## II. ANALYSIS

### A. Timeliness

The deadline for filing a § 2254 petition is set by 28 U.S.C. § 2244(d), which provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, the parties do not dispute that the Petition is untimely, and—at least until Fox's Reply, which the Court will address below—both parties appear to assume that § 2244(d)(1)(A) is the operative provision. When, as here, a petitioner files a direct appeal, proceeds unsuccessfully through the state-court system, and then files an unsuccessful petition for certiorari with the U.S. Supreme Court, the § 2244(d)(1)(A) limitations period begins when the U.S. Supreme Court denies the certiorari petition. See, e.g., Clay v. United States, 537 U.S. 522, 527 (2003) (citing cases); Williams v. Smith, No. 15-CV-4042 (SRN/FLN), 2016 WL 2894859, at *5 (D. Minn. May 18, 2016) (citing Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998)). Because the U.S. Supreme Court denied Fox's certiorari petition on November 16, 2015, Fox had until November 16, 2016, to file a § 2254 petition. Fox missed that deadline.[2] Therefore, the Petition is untimely.

### B. Equitable Tolling

Fox raises two arguments to bypass the conclusion that the Petition is untimely. First, he claims that he should get the benefit of equitable tolling. (See, Pet. [Docket No. 1], at 13; see also, Aff. of Fact & Mem. of Law [Docket No. 2], at 2–8 [hereinafter "Plf.'s Mem."]; Reply [Docket No. 20], at 2–9). Fox asserts that from November 2013 to May 2017, he was incarcerated in a

---

[2] As discussed above, Fox did file petitions for postconviction review, and under § 2244(d)(2), such petitions can toll the § 2244(d)(1) limitations period. But Fox filed his first postconviction-review petition on November 28, 2016—after his limitations period ended. Thus, his postconviction-review petitions did not toll the § 2244(d)(1)(A) limitations period.

4

Virginia prison where he lacked access to relevant legal materials, which prevented him from being able to file an adequate § 2254 petition. (See, e.g., Plf.'s Mem. [Docket No. 2], at 3).

The U.S. Supreme Court has held that a habeas petitioner should get the benefit of equitable tolling "'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" McQuiggin v. Perkins, 569 U.S. 383, 391 (2013) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)); see also, Burks v. Kelley, 881 F.3d 663, 666 (8th Cir. 2018) (same). Respondents argue that Fox has not established either equitable-tolling element. (See Answer [Docket No. 16], at 6–9).

For the extraordinary-circumstance prong, the issues here hinge on the amount of access Fox had to legal materials while he was in the Virginia prison. Unsurprisingly, the parties paint different pictures: Fox stresses the near-total lack of important legal materials in the Virginia prison's law library, while Respondents counter that Fox could have used the State of Minnesota's "Law Library Service to Prisoners" to access relevant materials while out-of-state. Compare, Plf.'s Mem. [Docket No. 2], at 3, with, Answer [Docket No. 16], at 7–8). After reviewing the parties' filings, the Court concludes that the equitable-tolling issue can be resolved on the diligent-pursuit element. Thus, the Court need not decide the extraordinary-circumstance question.

In reference to the diligent-pursuit element, Respondents argue that even if Fox's conditions in Virginia were an extraordinary circumstance, he still failed to diligently pursue his rights. Specifically, Respondents assert that Fox concedes being back in Minnesota by the end of May 2017, and Respondents contend that if the one-year § 2244(d)(1) clock is started on May 31, 2017, the Petition is still untimely. The Court agrees.[3] Indeed, so does Fox himself. (See, Reply [Docket No. 20], at 2, 5).

---

[3] The Court assumes for purposes of this analysis that Fox returned to Minnesota on the last day of May 2017—i.e., May 31, 2017. At that time, Fox's first postconviction-review petition was underway, and the Minnesota Supreme

5

Nevertheless, Fox tries to rebut this conclusion as follows. Under § 2244(d)(1)(B), the one-year deadline for a § 2254 petition begins on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Fox argues that being in the Virginia prison constituted a relevant sort of state-created impediment, such that the one-year § 2244(d)(1) clock should begin on May 31, 2017. (See, Reply [Docket No. 20], at 2–3). Hence, he claims that he simply needs the benefit of equitable tolling to cover the twenty-day period between July 7, 2020, and July 27, 2020. (See, Id. at 5).

In this Court's view, the maneuver here fails. The Court assumes for the present purposes that Fox's time in the Virginia prison is the sort of state-created impediment making § 2244(d)(1)(B) applicable. Even under that assumption, however, Fox must still justify applying equitable tolling to the period between July 7, 2020, and July 27, 2020. Therefore, he must show that during that period, he was "(1) . . . pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." See, McQuiggin, 569 U.S. at 391 (quoting Holland, 560 U.S. at 649). Putting aside the diligent-pursuit element, Fox makes no showing of any "extraordinary circumstance" present from July 7, 2020, to July 27, 2020.[4]

Accordingly, the Court concludes that Fox does not merit the benefit of equitable tolling.

---

Court issued its relevant decision on June 13, 2018. The § 2244(d)(1) clock thus began to run that day. Fox filed his second postconviction-review petition on January 11, 2019—212 days later. As a result, once the Minnesota Supreme Court issued its decision resolving he second petition on February 5, 2020, Fox had 153 days to file a § 2254 petition. This generated a deadline of July 7, 2020, and Fox filed the Petition on July 27, 2020.

[4] Fox suggests that his time in the Virginia prison prevented him from learning of relevant statutory time limits for § 2254 petitions, but this is hard to credit. (See, Reply [Docket No. 20], at 5). Fox was back in Minnesota—with conceded access to needed legal materials—as of May 31, 2017. If Fox was truly unaware of applicable deadline rules three full years after he got back to an adequate law library, the Court cannot see how he could have been diligently pursuing his rights.

### C.  Actual Innocence

Next, Fox makes an actual-innocence argument. The U.S. Supreme Court has held that "actual innocence, if proved, serves as a gateway" past "expiration of the [§ 2244(d)(1)] statute of limitations." McQuiggin, 569 U.S. at 386. But the U.S. Supreme Court has also warned that "tenable actual-innocence gateway pleas are rare" because "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

As purported evidence of actual innocence, Fox claims that hair was found in both of the murder victim's hands, that this hair's DNA was never tested, that Fox was bald at the time of the murder (suggesting that the hair could not be his), and that there were signs of a struggle at the murder scene (suggesting that the relevant hair could be the murderer's). (See, Plf.'s Mem. [Docket No. 2], at 8–9). Fox also states that all this is particularly problematic because "another [male's] DNA was also found under the [victim's] fingernails." (Id. at 9).

However, Fox has not met the threshold for a successful actual-innocence argument. Such an argument depends on the petitioner pointing to "new evidence." Where a petitioner does not actually rely on some sort of new evidence, he or she cannot rely on the actual-innocence argument. See, e.g., Schlup, 513 U.S. at 324 ("To be credible, [an actual-innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."); see also, House v. Bell, 547 U.S. 518, 537 (2006) (quoting and citing Schlup, 513 U.S. 298); Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (stating that under Schlup, "the petitioner must come forward with new reliable evidence that was not available at trial"); Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001) (same).

7

Fox points to no "new evidence" whatsoever. At most, he points to a possible path toward new evidence—in other words, <u>if</u> hair found in the victim's hands were tested for DNA, that test <u>might</u> show that the hair belongs to someone other than Fox, and that <u>could</u> be "new evidence" tending to exonerate Fox. The Court is unaware of any case suggesting that this sort of speculation is enough of a showing of "new evidence" to let a § 2254 petitioner use the actual-innocence route to avoid the § 2244(d)(1) limitations period.[5] Accordingly, this Court finds Fox's actual innocence argument is unpersuasive.

In sum, the Court finds that: (1) the Petition is untimely, (2) Fox is not entitled to equitable tolling, and (3) Fox has not made a sufficient showing of actual innocence to justify bypassing the § 2244(d)(1) limitations period. As a result, the Court concludes that the Petition is time-barred and should be dismissed with prejudice.

### D.   Certificate of Appealability

One further issue merits discussion: A habeas corpus petitioner seeking relief pursuant to § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability (hereinafter "COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must

---

[5] To be sure, Fox provides an explanation for why he does not have this evidence: he claims that he had ineffective assistance of trial and/or appellate counsel, including that those attorneys failed to get DNA testing of the hair found in the victims' hands. <u>See</u>, (Reply [Docket No. 20], at 12). And indeed, Fox lists failures of DNA testing in his Petition's recitation of how his trial and appellate counsel were ineffective. (<u>See</u>, Pet. [Docket No. 1], at 8, 10). However, Fox was clearly aware of this potential issue at the time that he filed his first petition for postconviction review because in that filing, dated November 28, 2016, he specifically requested DNA testing of "hair allegedly found in the victim's hand." (<u>See</u>, Order, [Docket No. 16-6], at 3). Given Fox's knowledge of this issue in November 2016, his ineffective-assistance claims based on the DNA evidence are plainly untimely (among other possible problems), and the Court sees no reason why a time-barred claim of ineffective assistance should be able to backstop an actual-innocence claim in the way Fox proposes.

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Fox's claims any differently than they have been decided here. Fox has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. It is therefore recommended that Fox not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner Thomas James Fox's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. No Certificate of Appealability be issued.

Dated: March 31, 2021

s/Leo I. Brisbois
Leo I. Brisbois
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the

Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).